UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

MICHAEL SWEET,

                Petitioner,                 Case No. 1:11-cv-861

v.                                         Honorable Robert J. Jonker

CAROL HOWES,

                Respondent.

_____/

## OPINION

        This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254.  On August 14, 2008, Petitioner pleaded guilty to four offenses: Count I, assault with intent to rob while armed in violation of Mich. Comp. Laws § 750.89; Count II, armed robbery in violation of Mich. Comp. Laws § 750.529; Count III, felony firearm in violation of Mich. Comp. Laws § 750.227b; and Count IV, felon in possession of a firearm in violation of Mich. Comp. Laws § 750.224f.  The felony complaint included a notice that the state was proceeding against Petitioner as an habitual offender, fourth offense.  As part of the plea, the state agreed to proceed against Petitioner as an habitual offender, second offense, instead of fourth offense.  Additionally, the plea included a *Killebrew* agreement[1] that Petitioner's minimum sentence would not exceed 16 years (18 including the felony firearm),

---

[1]"In Michigan, a *Killebrew* sentence agreement is binding between the parties but if the judge rejects the prosecutor's recommendation, then the defendant may withdraw his guilty plea and proceed to trial. *See Michigan v. Killebrew*, 416 Mich. 189, 330 N.W.2d 834 (1982)."  *Leatherman v. Palmer*, 387 F. App'x 533, 534 (6th Cir. 2010).

On October 8, 2008, Petitioner was sentenced to 16 years to 35 years on Count I, 16 years to 35 years on Count II, 2 years on Count III, and 3 years to 7.5 years on Count IV. The sentences on Counts I, II, and IV, were concurrent to each other and consecutive to the sentence on Count III. Effectively, Petitioner is serving a sentence of 18 years to 37 years.

In his *pro se* second amended petition (ECF No. 9) Petitioner raises ten grounds for relief:

I.    Petitioner is entitled to re-sentencing because OV 1 and 8 were mis-scored, and defense counsel was ineffective for failing to challenge the scoring of these variables.

II.    Ineffective assistance of appellate counsel for failing to raise all claims raised in Petitioner's motion for relief from judgment.

III.    The trial court erred by concluding that Petitioner's claims of defective prior convictions could not be challenged in the instant case. (Trial and appellate counsel refused to raise this issue.)

IV.    The trial court used jurisdictionally defective juvenile waiver and conviction to induce plea and penalty. (Trial and appellate counsel were ineffective for failing to raise this issue.)

V.    Petitioner's charge and plea to felon-in-possession is improper because it is based upon a 20-year sentence vacated in 1992, more than five years prior to the charged offense. *See* Mich. Comp. Laws § 750.224f. (Trial and appellate counsel refused to raise this issue.)

VI.    Petitioner's assault-with-intent-to-rob charge violates the Double Jeopardy Clause. (Trial and appellate counsel refused to address this issue.)

VII.    The guilty plea must be vacated because the Court failed to comply with Mich. Ct. Rule 6.302(D)(1) due to ineffective assistance of counsel.

VIII.    Petitioner was denied effective assistance of trial counsel. (Counsel failed to disclose proof of a contract allowing for reimbursement, failed to challenge defective prior convictions, failed to object to double jeopardy, denied Petitioner possible defense of diminished capacity, allowed false information to remain in the Pre-sentence Report, failed to suppress a confession, and

"committed affirmative conduct harmful to his client.") (2d Am. Pet., ECF No. 9, PageID.135.)

IX.     Petitioner was denied counsel at his arraignment and was denied the right to confront and cross-examine witnesses against him.

X.      The state court denied Petitioner due process of law by denying him evidentiary hearings and misapplying Rule 6.508(D) of the Michigan Court Rules.

(ECF No. 9.)  Respondent has filed an answer to the petition (ECF No. 27) and submitted the state-court record (ECF Nos. 20-36) as required under Rule 5, RULES GOVERNING §2254 CASES.   Upon review of the pleadings and the record, the Court will deny the petition for failure to raise a meritorious federal claim.

## **Procedural History**

### A.      **Trial Court Proceedings**

On the night of November 26, 2007, Petitioner, while drunk, knocked on the door of a restaurant in Ingham County.  (Plea Hr'g Tr., ECF No. 22, pp. 17-21.)  When the restaurant owner opened the door, Petitioner stuck out his arm, holding the gun, through the opening.  (*Id*.)  The restaurant owner, John Christofilis, slammed the door on Petitioner's arm and the gun fired.  (*Id*.)  Petitioner pushed his way into the restaurant, threatened the lives of Mr. Christofilis and his daughter, Demetra Christofilis, and demanded money.  (*Id*.)  He pulled Ms. Christofilis into the office and took the money that was there.  (*Id*.)  Petitioner fled, but was apprehended moments later.

Once caught, Petitioner confessed in the police cruiser and provided "the most spot-on dead accurate complete confession on videotape . . . ."  (Sentencing Hr'g Tr., ECF No. 23, p. 11.)  Petitioner was arraigned in district court the following afternoon.  (Arraignment Hr'g Tr., ECF No.

27.)  The court appointed Attorney Duane Silverthorn to represent Petitioner.  (Appearance, ECF No.

32.)  Petitioner waived his preliminary examination and arraignment in circuit court.  (*See* Waivers,

ECF Nos. 28-29.)

          On August 14, 2008, the date scheduled for trial, Petitioner entered a plea of guilty

to the four charged felonies and acknowledged a prior felony, an April 15, 1992 conviction for

assault with intent to do great bodily harm MICH. COMP. LAWS § 750.84 (date of offense - October

13, 1989), such that he would be sentenced as a habitual offender, second offense.[2]  (Plea Hr'g Tr.,

ECF No. 22, pp. 11-21.)  Part of Petitioner's plea agreement was a maximum minimum sentence of

16 years (18 years if one includes the consecutive felony firearm sentence).  (Plea Hr'g Tr., ECF No.

22, pp. 15-16.)

          On October 8, 2008, Petitioner was sentenced as outlined above.  The court's scoring

of two offense variables and one prior record variable are significant for purposes of this petition.

(*See* Sentencing Information Reports, ECF No. 27.)  With respect to offense variable 1 (aggravated

use of a weapon), the court scored 25 points.  (*Id*.)  The guidelines provide that a score of 25 points

is appropriate where "A firearm was discharged at or toward a human being . . . ."  Michigan Judicial

Institute, State of Michigan Sentencing Guidelines Manual (2007), p. 17, available at

https://mjieducation.mi.gov/documents/felony-sentencing-resources;69-2007-sgm/file (hereinafter

"SGM").  There was no discussion of the scoring of this variable at the sentencing hearing.

---

[2]The prosecutor had previously provided notice that the state would be proceeding against Petitioner as an habitual offender, fourth offense.  The additional two offenses are (1) a November 18, 1981 conviction for breaking and entering a building with intent to commit a felony in violation of MICH. COMP. LAWS § 750.110 (date of offense - December 21, 1980); and (2) a November 18, 1981 conviction for armed robbery in violation of MICH. COMP. LAWS § 750.529 (date of offense - December 5, 1980).  These offenses were committed while Petitioner was a juvenile.  He was waived into the adult system and convicted and punished accordingly.  Petitioner contends these convictions are invalid and his challenges to his current convictions and sentences depend in part on that contention.

With respect to offense variable 8, the court scored 15 points.  (Sentencing Information Reports, ECF No. 27.)  The guidelines provide that a score of 15 points is appropriate where "[a] victim was asported to another place of greater danger or to a situation of greater danger . . . ."  SGM, p. 21.  The prosecutor contended, and Petitioner's counsel stipulated, that Petitioner asported Ms. Christofilis to a place of greater danger when Petitioner pulled her into the office. (Sentencing Hr'g Tr., ECF No. 23, pp. 3-5.)

Finally, with respect to prior record variable 1, the court scored the variable at 75 points.  (Sentencing Information Reports, ECF No. 27.)  The guidelines provide that a score of 75 points is appropriate where "[t]he offender has: 3 or more prior high severity convictions."  SGM, p. 11.  The convictions used to score this variable are the three prior convictions referenced above: the convictions from 1992 and 1981.

Based on the scoring of the variables, a PRV total of 105, which corresponds to PRV Level F, and an OV total of 60 which corresponds to an OV level of IV.  (Sentencing Information Reports, ECF No. 27.)  With those levels, the sentencing grid yields a minimum sentence range of 171 to 356 months.  SGM, p. 92.  The *Killebrew* agreement maximum minimum of 16 years (192 months) is near the bottom of that range.[3]

## B.    Direct Appeal

Petitioner filed an application for leave to appeal to the Michigan Court of Appeals. His brief, filed by counsel, raised the offense variable scoring issues referenced above and an

---

[3]If the scoring were computed in accordance with Petitioner's arguments (OV 1=0, OV 8=0, PRV 1=25), Petitioner would have a PRV total of 55 which corresponds to a PRV Level E, and an OV total of 20 which corresponds to an OV level of II.  (Sentencing Information Reports, ECF No. 27.)  With those levels, the sentencing grid yields a minimum sentence range of 108 months to 225 months.  SGM, p. 92.  Thus, even crediting all of Petitioner's sentencing arguments, his *Killebrew* agreement maximum minimum sentence still would fall within the sentencing guideline range.

ineffective assistance claim against trial counsel for failing to object to the offense variable scoring at sentencing.[4]  (Delayed Appl. for Leave to Appeal, ECF No. 33.)  The court of appeals denied the application "for lack of merit in the grounds presented"  by order entered September 28, 2009. (Mich. Ct. Of Appeals Order, ECF No. 33.)

Petitioner filed a pro per application for leave to appeal to the Michigan Supreme Court raising the offense variable scoring and ineffective assistance of counsel issues that he had raised in the court of appeals plus several new issues:

I.     Petitioner's guilty plea conviction violates MICH. CT. R.  6.302 and the due process clause where the trial court failed to advise Petitioner of a [financial] mandatory sentencing penalty under MICH. COMP. LAWS § 769.1 notwithstanding the pleas and sentencing agreement were accepted by the court.

II.    Trial counsel was ineffective for failing to advise Petitioner of the mandatory sentencing penalty.

III.   Trial counsel was ineffective for failing to request a mental health evaluation for sentencing mitigation.

IV.    Trial counsel was ineffective for failing to request jail credit for time served where all prior sentences had maxed out prior to 2007 offense.

V.     Appellate counsel was ineffective for failing to raise issues I-IV above.

VI.    Appellate counsel was ineffective for failing to request a hearing regarding statements Petitioner claims he made during trial court proceedings that do not appear in the court record.

---

[4]To preserve the scoring issues for appeal, Petitioner filed a motion for resentencing in the trial court before filing his application for leave to appeal.  (*See* Mot. To Correct Invalid Sentence, ECF No. 27.)  The court denied the motion.  (June 17, 2009 Order, ECF No. 27.)

(Pro per Appl. for Leave to Appeal, ECF No. 34.)  By order entered January 29, 2010, the Michigan Supreme Court denied his application for leave to appeal because it was not persuaded that the questions presented should be reviewed.  (Mich. Supreme Ct. Order, ECF No.34.)

### C.      Post-conviction relief

On April 19, 2011, Petitioner filed a motion for relief from judgment in the Ingham County Circuit Court raising multiple claims of error:

I.       Petitioner was denied effective assistance of trial and appellate counsel.

II.      The trial court erred when it concluded Petitioner's claims of defective prior convictions could not be used in the instant case.

III.     Petitioner's plea was not intelligent and voluntary because it was induced by the habitual offender-fourth offense notice and Petitioner's 1981 juvenile waiver convictions should only count as one conviction.

IV.      The charge and Petitioner's plea to felon in possession is null and void because the underlying felony conviction and sentence suffer from a radical defect.

V.       Petitioner's assault with intent to rob charge and conviction violate the double jeopardy clause.

VI.      Petitioner's guilty plea to assault with intent to rob must be vacated because the court failed to comply with MICH. CT. R.  6.302(D)(1).

VII.     Petitioner was denied the effective assistance of trial counsel when counsel's whole performance is scrutinized.

VIII.    Petitioner was denied counsel at his district court arraignment and the right to confront and cross-examine witnesses against him, rendering all subsequent proceedings invalid.

(Petitioner's Motion for Relief from Judgment, ECF No. 25.)  The trial court denied Petitioner's motion because the grounds he raised could have been raised on direct appeal and Petitioner had not

shown good cause for his failure to do so or resulting prejudice.[5]  (May 19, 2011 Op., ECF No. 26.)

Petitioner sought leave to appeal in the Michigan Court of Appeals and the Michigan Supreme

Court.  Both courts denied leave to appeal under Mich. Ct. R. 6.508(D), on October 4, 2011, and

September 19, 2012, respectively.  (*See* Mich. Ct. App. Ord., ECF No. 35; Mich. Ord. ECF No. 36.)

On August 16, 2011, while the denial of his MICH. CT. R. 6.500 motion was still working its way

through the Michigan appellate courts, Petitioner commenced this action.  (Pet., ECF No. 1.)[6]

Petitioner also filed motions for relief from judgment under MICH. CT. R. 6.500 *et*

*seq*. in each of his earlier criminal cases.  The motions were all denied, as were his subsequent

applications for leave to appeal in the Michigan appellate courts.[7]  Petitioner then filed habeas corpus

petitions in this court challenging the 1992 assault with intent to do great bodily harm conviction and

sentence, *Sweet v. Hoffner*, No. 1:13-cv-1035 (W.D. Mich.), and the 1981 breaking and entering and

---

[5]Petitioner's failure to show (1) cause for his failure to raise the issues on his direct appeal or (2) resulting prejudice constitutes a procedural default.  "If a petitioner does not satisfy the procedural requirements for bringing an error to the state court's attention --whether in trial, appellate, or habeas proceedings, as state law may require--procedural default will bar federal review."  *Magwood v. Patterson*, 561 U.S. 320, 130 S. Ct. 2788, 2801 (2010). Nevertheless, the U.S. Supreme Court has held that federal courts are not required to address a procedural default issue before deciding against the petitioner on the merits.  *See Hudson v. Jones*, 351 F.3d 212, 216 (6th Cir. 2003) (citing *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997) ("Judicial economy might counsel giving the [other] question priority, for example, if it were easily resolvable against the habeas petitioner, whereas the procedural bar issue involved complicated issues of state law."), and *Nobles v. Johnson*, 127 F.3d 409, 423 24 (5th Cir. 1997) (deciding against the petitioner on the merits even though the claim was procedurally defaulted)).  *See also* 28 U.S.C. § 2254(b)(2) ("An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.").  Where, as here, the procedural default issue raises more questions than the case on the merits, the Court may assume without deciding that there was no procedural default or that Petitioner could show cause and prejudice for that default.  *See Hudson*, 351 F.3d at 215-16; *Binder v. Stegall*, 198 F.3d 177, 178 (6th Cir. 1999).

[6]The case was held in abeyance pending Petitioner's exhaustion of his state court remedies.  (Op. and Ord., ECF Nos. 11, 12.)

[7]*See People v. Sweet*, No. 307821 (Mich. App. June 8, 2012); *People v. Sweet*, No. 145476 (Mich. Sept. 24, 2012); *People v. Sweet*, No. 304599 (Mich. App. Oct. 2, 2011); *People v. Sweet*, No. 144161 (Mich. Sept. 19, 2012).

armed robbery convictions and sentences, *Sweet v. Hoffner*, No. 1:13-cv-1036 (W.D. Mich.).  Both petitions were dismissed as untimely.

### Standard of Review

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, PUB. L. 104-132, 110 STAT. 1214 (AEDPA). *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court

announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-court adjudication on the merits. *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts. *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06). "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Woods*, 2015 WL 1400852, at *3 (quoting *Harrington v. Richter*, 562 U.S. 86, 103 (2011)). In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims." *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state appellate courts, as well as the trial court. *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v.*

*Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989). Applying the foregoing standards under the AEDPA, I find that Petitioner is not entitled to relief.

## Discussion

### A.      Petitioner's prior convictions

Several of Petitioner's habeas claims depend on his contention that his prior convictions and sentences were invalid.[8] Petitioner's petition, therefore, raises the question: At what point do prior state court convictions become final and beyond challenge for purposes of federal habeas review of subsequent convictions?   The Supreme Court answered that question in *Lackawanna Cty. Dist. Attorney v. Coss*, 532 U.S. 394 (2001).  In *Coss*, the Court explained the importance of finality:

> Once a judgment of conviction is entered in state court, it is subject to review in multiple forums.  Specifically, each State has created mechanisms for both direct appeal and state postconviction review, *see* L. Yackle, Postconviction Remedies §§ 1, 13 (1981 and Supp. 2000), even though there is no constitutional mandate that they do so, [citations omitted].  Moreover, § 2254 makes federal courts available to review state criminal proceedings for compliance with federal constitutional mandates.
>
> As we said in *Daniels*, "[t]hese vehicles for review ... are not available indefinitely and without limitation."  *Post*, at 381, 121 S.Ct. 1578.  A defendant may choose not to seek review of his conviction within the prescribed time.  Or he may seek review and not prevail, either because he did not comply with procedural rules or because  he failed to prove a constitutional violation.  In each of these situations, the defendant's conviction becomes final and the State that secured the conviction obtains a strong interest in preserving the integrity of the judgment.  *See post*, at 379–380, 121 S.Ct. 1578.  Other jurisdictions acquire an interest as well, as they may then use that conviction for their own recidivist sentencing purposes, relying on "the 'presumption of regularity' that attaches to final judgments." [citations omitted].

---

[8]The invalidity of Petitioner's prior convictions are at least part of the foundation for Issue III (trial court error for refusal to permit challenge to prior convictions); Issue IV (trial court used defective prior convictions to induce plea and impose penalty); Issue V (felon in possession charge depends on invalid extension of sentence for 1992 conviction); Issue X (court denied due process by refusing to compel production of documents or order hearings on validity of prior convictions); and Issues II and VII (ineffective assistance of trial and appellate counsel).

*Id.* 532 U.S. at 402-03.   With that interest in mind, the Court held "once a state conviction is no longer open to direct or collateral attack in its own right because the defendant failed to pursue those remedies while they were available (or because the defendant did so unsuccessfully), the conviction may be regarded as conclusively valid."   *Id.* at 403.

There can be no question that Petitioner's 1981 and 1992 state convictions are no longer open to direct or collateral attack.   He has already pursued direct appeals, state post-conviction motions for relief, and federal habeas corpus petitions, to no avail.   In evaluating Petitioner's present challenge to his 2008 convictions and sentences, therefore, this Court must accept Petitioner's 1981 and 1992 state convictions and sentences as conclusively valid, unless Petitioner can establish he fits within an exception to the *Coss* rule.

The Supreme Court recognized an exception to the *Coss* general rule if "the prior conviction . . . was obtained where there was a failure to appoint counsel in violation of the Sixth Amendment, as set forth in *Gideon v. Wainwright*, 372 U.S. 335 (1963)."   *Id.* at 404.   Petitioner had counsel from the preliminary hearing through sentencing for his 1992 conviction.   (*See Sweet v. Hoffner*, No. 1:13-cv-1035, ECF No. 1, PageID.12.)   Petitioner had counsel from the preliminary hearing through sentencing for his 1981 convictions as well.   (*See Sweet v. Hoffner*, No. 1:13-cv-1036, ECF No. 1, PageID.12.)   Accordingly, he does not fit the only recognized exception to the *Coss* rule.[9]

---

[9]In section III B of the *Coss* opinion author Justice O'Connor was joined by Chief Justice Rehnquist and Justice Kennedy.   In section III B, those justices recognized two more potential exceptions: "[where] a state court . . ., without justification, refuse[s] to rule on a constitutional claim that has been properly presented to it . . . [or where] after the time for direct or collateral review has expired, a defendant . . . obtain[s] compelling evidence that he is actually innocent of the crime for which he was convicted, . . . which he could not have uncovered in a timely manner." *Coss*, 532 U.S. at 405. Petitioner does not claim he is innocent of the crimes of which he was convicted; nor does Petitioner contend that the Michigan courts have refused to rule on his constitutional issues without justification.   Therefore, Petitioner does not fit within any other possible exception to the *Coss* rule.

Accepting the conclusive validity of Petitioner's 1981 and 1992 convictions, Petitioner's habeas issues III, IV, and V are without merit.

### B.    Double jeopardy

The Double Jeopardy Clause guarantees that no person shall be "subject for the same offense to be twice put in jeopardy of life or limb." U.S. CONST. amend. V. This clause protects against multiple punishments for the same offense. *See North United States v. Dixon*, 509 U.S. 688, 696 (1993); *North Carolina v. Pearce*, 395 U.S. 711, 717 (1969); *Costo v. United States*, 904 F.2d 344 (6th Cir. 1990). The protection against multiple punishments for the same criminal act "is designed to insure that the sentencing discretion of courts is confined to the limits established by the legislature." *Ohio v. Johnson*, 467 U.S. 493, 499 (1984). This guarantee serves principally as a restraint on courts and prosecutors, not on legislatures. *See Garrett v. United States*, 471 U.S. 773, 793 (1985) (no double-jeopardy violation when Congress intended to permit prosecution for continuing criminal enterprise after prior conviction for predicate offense); *Missouri v. Hunter*, 459 U.S. 359, 365-66 (1983). Therefore, when determining whether punishments are "multiple" under this aspect of the Double Jeopardy Clause, the court is bound by the intent of the legislature. *Johnson*, 467 U.S. at 499; *Hunter*, 459 U.S. at 366-68.

In this context, the United States Supreme Court has traditionally applied the "same elements" test first enunciated in *Blockburger v. United States*, 284 U.S. 299, 304 (1932). *See Rutledge v. United States*, 517 U.S. 292, 297 (1996). The same-elements test, also known as the "*Blockburger* test," inquires whether each offense contains an element not contained in the other. If "the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one is whether each provision

requires proof of a fact which the other does not." *Blockburger*, 284 U.S. at 304.  If not, they are the "same offense" and double jeopardy bars additional punishment.  *See Brown v. Ohio*, 432 U.S. 161, 168-69 (1977).  If the *Blockburger* test is satisfied, however, it is presumed that the legislature intended to punish the defendant under both statutes and there is no double jeopardy bar to multiple punishments.  *Whalen v. United States*, 445 U.S. 684, 691-92 (1980).

Petitioner complains that he has been subjected to improper multiple punishments in violation of the double jeopardy clause because he was convicted and sentenced for armed robbery in violation of MICH. COMP. LAWS § 750.529 and assault with intent to rob while armed in violation of MICH. COMP. LAWS § 750.89.  Petitioner's position is not wholly without merit.  The Michigan Court of Appeals has applied "the [*Blockburger*] same-elements test that is now applicable to the multiple-punishments strand of double jeopardy under [*People v.* ]*Smith*, [733 N.W.2d 351 (2007)]" to these two Michigan criminal statutes and concluded "neither crime contains an element the other does not."  *People v. Gibbs*, 830 N.W. 2d 821, 830 (Mich. App. 2013).  "When assessing the intent of a state legislature, a federal court is bound by a state court's construction of that state's own statutes" and "by a state court's determination of the legislature's intent."  *Banner v. Davis*, 886 F.2d 777, 780 (6th Cir. 1989) (citing *Hunter*, 459 U.S. at 368; *O'Brien v. Skinner*, 414 U.S. 524, 531 (1974); *Ohio v. Johnson*, 467 U.S. 493 ,499 (1983)).  Accordingly, the issue of the legislature's intent as measured by the *Blockburger* test appears to be settled.

But, in raising this argument, Petitioner ignores the fact that he was convicted of perpetrating the crime of assault with intent to rob while armed against John Christofilis and of perpetrating the crime of armed robbery against Demetra Christofilis.  In *Gibbs*, the prosecutor conceded the double jeopardy problem because the assault with intent to rob while armed and armed

- 14 -

robbery counts involved "the same victim during the same criminal episode." *Id.* at 829.  That is not

the case here.  Perhaps recognizing the distinction, Petitioner now argues that there was really only

one victim: the restaurant.[10]  The Michigan Supreme Court rejected that argument in *People v.*

*Wakeford*, 341 N.W.2d 68 (1983).  In *Wakeford* the defendant argued that the state violated the

Double Jeopardy Clause because he had committed only one armed robbery of a store yet he was

convicted of two counts of armed robbery, one for each cashier in the store.  *Id.*  The Michigan

Supreme Court looked to the intent of the legislature:

> The dispositive question is whether the Legislature intended that two convictions might result under M.C.L. § 750.529; M.S.A. § 28.797 under the circumstances presented in this case.  The language of the statute consistently refers to the robbery victim in the singular; viz., "his person", "his presence", "the person so assaulted".  This strongly suggests that the gravamen of the offense is the armed assault on a person when combined with the taking of money or property.  The primary purpose of the statute is the protection of persons; the protection of property afforded by the statute is not significantly greater than that afforded by the statute prohibiting larceny from the person of another, a felony punishable by a 10-year maximum penalty.  M.C.L. § 750.357; M.S.A. § 28.589.

> The defendant argues that the taking of property from a single owner, the market, at the same time and place constitutes but one offense, citing *People v. Williams*, 296 N.W.2d 293 (1980), lv. den. 411 Mich. 897 (1981); Anno.: Single or Separate Larceny Predicated Upon Stealing Property From Different Owners at the Same Time, 37 A.L.R.3d 1407.  In *People v. Johnson*, 81 Mich. 573, 45 N.W. 1119 (1890), this Court rejected the defendant's claim that stealing several items belonging to different owners from separate floors of a granary constituted separate larcenies that could not be charged in one general information.  The majority rule appears to be that the theft of several items at the same time and place constitutes a single larceny.  *See* Anno., 37 A.L.R.3d 1407, 1410.  However, a taking that constitutes a "single offense" under the larceny statute may give rise to multiple convictions under the armed robbery statute.  The appropriate "unit of prosecution" for larceny is the taking at a single time and place without regard to the number of items taken; the appropriate "unit of prosecution" for armed robbery is the person assaulted and robbed.

---

[10]At the plea hearing, however, he acknowledged there were two people. (Plea Hr'g Tr., ECF No. 22, pp. 17-21.)

*Id.* at p. 75 (footnotes and parallel citations omitted). It is, therefore, the intent of the Michigan legislature to punish two separate offenses here because the assault that was the foundation for the assault with intent to rob was perpetrated against one victim and the assault that was the foundation for the armed robbery was perpetrated against another victim. *See, i.e., Lee v. Berghuis*, No. 08-11070, 2010 WL 104484 (E.D. Mich. Jan. 7, 2010) (*Wakeford* requires the conclusion that there is no double jeopardy violation where armed petitioner took money from restaurant cash register and he was convicted of three counts of armed robbery, one for each restaurant employee present at the time). Petitioner's double jeopardy claim is without merit.

## C. Sixth Amendment right to counsel at arraignment

The Sixth Amendment to the United States Constitution guarantees that "[i]n all criminal prosecutions, the accused shall enjoy the right ... to have the Assistance of Counsel for his defense." U.S. Const., amend. VI. The Sixth Amendment right to counsel does not attach until a prosecution is commenced, that is until the initiation of adversary criminal proceedings by a formal charge, a preliminary hearing, an indictment, an information or an arraignment. *See McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991). "It is only at that time 'that the government has committed itself to prosecute, and only then that the adverse positions of government and defendant have solidified. It is then that a defendant finds himself faced with the prosecutorial forces of organized society, and immersed in the intricacies of substantive and procedural criminal law.' " *United States v. Gouveia*, 467 U.S. 180, 189 (1984) (quoting *Kirby v. Illinois*, 406 U.S. 682, 689 (1972)). Once the right to counsel attaches, "the Sixth Amendment guarantees a defendant the right to have counsel present at all "critical" stages of the criminal proceedings." *Montejo v. Louisiana*, 556 U.S. 778, 786 (2009).

- 16 -

Although the right to counsel may attach at arraignment, that does not mean that "arraignment itself is a critical stage requiring the presence of counsel." *Rothgery v. Gillespie Cty., Tex.*, 554 U.S. 191, 212 (2008) (citing *Michigan v. Jackson*, 475 U.S. 625, 630, n.3 (1986)).  By way of example, in *Hamilton v. Alabama*, 368 U.S. 52 (1961) the Supreme Court concluded that arraignment in Alabama was a "critical stage" because if a criminal defendant failed to raise certain defenses at that stage, the defenses were waived.  The *Hamilton* Court acknowledged, however, that "[a]rraignment has differing consequences in the various jurisdictions . . . ." *Id.* at n. 4.  In *Lundberg v. Buchkoe*, 389 F.2d 154 (6th Cir. 1968), the Sixth Circuit concluded that arraignment in Michigan is not a critical stage of the criminal proceeding:

> In Michigan the 'preliminary examination has for its limited purpose only the determination by a magistrate whether there is probable cause to bind the defendant over for trial . . . .' *People v. Zaleski*, 133 N.W.2d 175 (1965); *See People v. Podolski*, 518, 52 N.W.2d 201, *cert. denied*, 344 U.S. 845 (1952).  In light of the above principles, it cannot be said that Michigan's arraignment and preliminary examination proceedings, in and of themselves, constitute a critical stage of the proceedings.  Nor were there any special circumstances in appellant's case which might suggest that the proceedings were critical; no plea or statement was in fact obtained from appellant at his arraignment and, aside from his right not to be held in custody absent probable cause, appellant neither lost nor waived any right or defense. The fact that appellant might have received some collateral benefit in the form of pretrial discovery had he not waived examination is immaterial. *See Wilson v. Harris, supra*; *United States ex rel. Cooper v. Reincke*, 333 F.2d 608 (2nd Cir.), *cert. denied*, 379 U.S. 909 (1964).  Appellant's claim that his conviction is invalid because of the denial of the assistance of counsel at his arraignment proceedings is thus rejected.

*Id.* at p. 158 (parallel citations omitted).

A review of the transcript of Petitioner's arraignment compels the same result here.  The arraignment was not a "critical stage."  The magistrate simply read the charges, informed Petitioner of his rights, informed him of the date and time for his preliminary examination, and accepted Petitioner's request for the appointment of counsel.  (Arraignment Tr., ECF No. 27, pp.

- 17 -

1-8.)  No witnesses testified, no exhibits were introduced, Petitioner made no plea or statement, and he lost no right or defense.  Counsel filed an appearance three days later.  (Appearance, ECF No. 32.)  Petitioner has not alleged, and cannot allege, harm that accrued to him because he did not have counsel at the arraignment.  Petitioner's "right to counsel" claim has no merit.

### D.	No factual basis for Petitioner's guilty plea

Petitioner argues that his plea must be vacated because the trial court failed to establish support for finding that Petitioner was guilty of the charged offenses as required by MICH. CT. R. 6.302(D).  The requirement that the court establish a factual basis for a guilty plea is a creature of rule, not the federal Constitution. While states are free to adopt procedural rules requiring a factual basis, as Michigan has done, the Federal Constitution does not mandate them to do so.  *See North Carolina v. Alford*, 400 U.S. 25, 37-38 (1970); *Watkins v. Lafler*, 517 F. App'x 488, 500 (6th Cir. 2013); *Roddy v. Black*, 516 F.2d 1380, 1385 (6th Cir. 1975).  "[A] mere violation of [MICH. CT. R. 6.302(D)] cannot support a habeas claim."  *Watkins*, 517 F. App'x at 500.[11]

### E.	Improper scoring of offense variables

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000)

---

[11]Moreover, Petitioner's contention that the factual basis was insufficient is not supported by the record.  The shortcoming he identifies is that he "only admitted to robbing a restaurant, as his only intent, with two people happening to be there." (Brief, ECF No. 6-2, PageID.71.) Or, put differently, his plea was "simply a plea to armed robbery wherein two people were there." (*Id.*)  The flaw in Petitioner's argument, however, is that "assault with intent to rob while armed" is a lesser included offense of "armed robbery."  *Gibbs*, 830 N.W. 2d at 830.  "'[I]t is impossible to commit [armed robbery] without first having committed [assault with intent to rob while armed].'" *Id.* at 829.  If Petitioner admitted he committed armed robbery, he necessarily admitted that he committed assault with intent to rob while armed.

(alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v. Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978). Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations." *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'" *Bowling v. Parker*, 344 F.3d 487, 521 (6th Cir. 2003) (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted). A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude." *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948). To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence. *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984). A sentencing court

- 19 -

demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence. *Tucker*, 404 U.S. at 447.

Petitioner's sentence clearly is neither arbitrary nor shocking. Further, Petitioner does not even argue that the facts found by the court at sentencing were either materially false or based on false information. *Tucker*, 404 U.S. at 447. Instead, Petitioner argues only that the court's sentencing findings were not sufficiently supported. Such claims clearly fall far short of the sort of egregious circumstances implicating due process.

Moreover, the court's sentencing findings are supported by the record. Before filing his initial application for leave to appeal, Petitioner filed a motion to correct his improperly scored sentence in the trial court. At the June 17, 2009 hearing on that motion, the trial court found, with respect to offense variable 1, that Petitioner held the gun, the gun fired, and it was at or toward another person. (Mot. Hr'g, ECF No. 24, p. 4.) With respect to offense variable 8, the trial court found Petitioner had asported one victim to the office and that the office was a place of greater danger. These factual findings[12] are presumed to be correct, 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656, and are supported by Petitioner's admissions at his plea as well as the victim's descriptions of the crime as reported in the Presentence Investigation Report.

Petitioner has failed to provide any evidence, much less clear and convincing evidence, to rebut the presumption of correctness accorded to the trial court's factual findings. Thus, Petitioner's challenge to the scoring of the offense variables on these facts is meritless. The state-

---

[12]Whether Petitioner held the gun, whether the gun fired, and whether the direction the gun fired was at or toward another person are clearly questions of fact. Whether or not a particular movement of the victim constitutes asportation is also "a question of fact[.]" *People v. Adams*, 205 N.W.2d 415, 423 (1973).

court's rejection of Petitioner's claim was not based on an unreasonable determination of the facts and was neither contrary to nor an unreasonable application of established Supreme Court precedent. 28 U.S.C. § 2254(d).

### F.   Misapplication of MICH. CT. R.  6.508(D)

Petitioner contends that the state trial court misapplied MICH. CT. R. 6.508(D) and, as a result, erroneously denied him post-conviction relief.  The United States Constitution does not guarantee any right to collaterally attack a criminal conviction in the state courts.  *See, e.g.*, *Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) ("States have no obligation to provide this [post-conviction] avenue of relief."); *accord United States v. MacCollom*, 426 U.S. 317, 323 (1976) (plurality opinion).  Also, errors in post-conviction proceedings are not a proper basis for habeas corpus relief, because such challenges do not address the legality of the Petitioner's confinement. *See Kirby v. Dutton*, 794 F.2d 245, 245-46 (6th Cir. 1986); *accord Williams-Bey v. Trickey*, 894 F.2d 314, 317 (8th Cir. 1989), *cert. denied*, 495 U.S. 936 (1990).  A finding by a federal habeas court that petitioner was wrongly denied post-conviction review would avail petitioner nothing, because it would not entitle him to release.  *Kirby*, 794 F.2d at 246.  In other words, if this court were to find that the state circuit court did not properly analyze Petitioner's claim that his issues were not raised on a prior appeal, it would mean only that the decision-making process was erroneous and not necessarily that the underlying issue had merit entitling Petitioner to release.

### G.   Ineffective assistance of counsel

#### 1.   Trial counsel

Petitioner contends that his trial counsel was ineffective for failing to:  (1) challenge the scoring of the offense variables; (2) disclose proof of a contract allowing for reimbursement;

(3) challenge prior defective convictions; (4) object to double jeopardy; (5) raise the defense of diminished capacity; (6) challenge false information in the Presentence Investigation Report; and (7) suppress Petitioner's confession.  Petitioner also claims his counsel committed affirmative conduct harmful to his client.

Claims about the deprivation of constitutional rights that occur before the entry of a guilty plea are foreclosed by that plea.  *See United States v. Broce*, 488 U.S. 563, 569 (1989); *Tollett*, 411 U.S. at 267. The United States Supreme Court has explained:

> [A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea. He may only attack the voluntary and intelligent character of the guilty plea by showing that the advice he received from counsel was not within [constitutional standards].

*Tollett*, 411 U.S. at 267.  Consequently, a knowing and voluntary guilty plea waives all nonjurisdictional defects in the proceedings, including a claim of ineffective assistance of counsel that does not relate to the voluntariness of the plea.  *See U.S. v. Stiger*, 20 F. App'x 307, 308–09 (6th Cir. 2001).  Many of Petitioner's claims of ineffective assistance from trial counsel (claims 2, 3, 4, 5, and 7 above) do not attack the voluntary or intelligent nature of his plea by showing that counsel's advice was inadequate, but instead relate to earlier alleged constitutional deprivations.  His claims have therefore been waived by his subsequent guilty plea.  *See Stiger*, 20 F. App'x at 308-09; *see also United States v. Bohn*, 956 F.2d 208, 209 (9th Cir. 1992) (pre-plea ineffective assistance of counsel claims are waived).  Petitioner's claims that his trial counsel was ineffective because he failed to object to the offense variable scoring or challenge false information in the Presentence Investigation Report occurred subsequent to, and thus are unaffected by, his guilty plea.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment. *Id.* at 691.  "When deciding ineffective-assistance claims, courts need not address both components of the inquiry 'if the defendant makes an insufficient showing on one.'" *Campbell v. United States*, 364 F.3d 727, 730 (6th Cir. 2004) (quoting *Strickland*, 466 U.S. at 697). "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed."  *Strickland*, 466 U.S. at 697.

### a.    Offense variables

Even accepting all of Petitioner's arguments with regard to offense variables, the *Killebrew* agreement maximum minimum sentence of 16 years fell within the range specified by the

sentencing guidelines.  *See* Note 3, *infra*.  The victims had agreed to the 16 year maximum minimum and the trial court described that as "a measure of mercy that this family had given [Petitioner]" that the judge was "willing to follow. . . ."  (Sentencing Tr. ECF No. 23, p. 19.)  There is nothing in the record to suggest that the trial court would have provided some greater measure of mercy than that authorized by the victims simply because the 16 year sentence would have fallen slightly higher in the permissible range of minimum sentences under the guidelines.  Thus, Petitioner has failed to demonstrate any prejudice.

Critically, however, this Court is not free to accept Petitioner's offense variable arguments.  As set forth above, the trial court's factual findings are presumed to be correct and provide ample support for the scoring of the offense variables.  Any challenge to the scoring of the offense variables on these facts would be meritless.  "Omitting meritless arguments is neither professionally unreasonable nor prejudicial."  *Coley v. Bagley*, 706 F.3d 741, 752 (6th Cir. 2013).

### b.       Petitioner's mental status as a mitigating factor

Petitioner also contends that trial counsel rendered ineffective assistance by failing to submit Petitioner's mental health history as mitigating information at sentencing.  The record does not support Petitioner's contention that his counsel failed to bring Petitioner's mental health to the court's attention.  Petitioner and his counsel raised the issue for the court before Petitioner decided to plead guilty.  (Plea Tr., ECF No. 22, pp. 5-7.)  The difficulties Petitioner had faced in his youth, in prison, and in his life immediately before he committed these offenses, as well as the effect of these factors on his mental health, were discussed at the sentencing hearing, by Petitioner, his counsel, the prosecutor and the court.  (Sentencing Tr., ECF No. 23, pp. 10-19.)  To the extent Petitioner believes there is some additional mitigating evidence that his attorney missed, he has not

submitted it to this Court.  Absent such evidence, Petitioner has failed to carry his burden that his counsel's presentation of Petitioner's mental health status was objectively unreasonable.  Moreover, particularly in light of the court's apparent reluctance to embrace even the agreed-upon "merciful" 16 year minimum sentence, Petitioner has failed to demonstrate that he suffered any prejudice resulting from counsel's failure to present additional evidence with regard to Petitioner's mental health status.

### 2.    Appellate counsel

Petitioner contends his appellate counsel rendered constitutionally ineffective assistance because she failed to raise on direct appeal the issues he raised in his post-conviction motion for relief from judgment.  As set forth above, however, none of those issues have merit. Where a claim lacks merit, appellate counsel is not ineffective in declining to raise the issue on direct appeal.  *See Moore v. Mitchell*, 708 F.3d 760, 776 (6th Cir. Feb. 26, 2013) ("[A] petitioner cannot show that appellate counsel was ineffective for failing to raise a claim on appeal if the underlying claim itself lacks merit."); *Burton v. Renico*, 391 F.3d 764, 781-82 (6th Cir. 2004) (where claim of prosecutorial misconduct lacks merit, counsel is not ineffective in declining to raise issue on appeal).

### Conclusion

In light of the foregoing, the Court will deny Petitioner's application because it fails to raise a meritorious federal claim.

### Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted.  A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The Sixth Circuit

Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's denial of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated: _____August 24, 2016_____        /s/ Robert J. Jonker_____
                                            ROBERT J. JONKER
                                            CHIEF UNITED STATES DISTRICT JUDGE